UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| HOWARD SACHS, | Civil No. 3:20cv570 (JBA) |
| *Plaintiff,* | |
| *v.* | August 4, 2021 |
| CITIZENS FINANCIAL GROUP, INC. d.b.a. CITIZENS BANK, N.A., | |
| *Defendant.* | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Citizens Financial Group (Citizens) brings this motion for summary judgment [Doc. # 19] on all counts of Plaintiff Howard Sachs's complaint [Doc. # 1-2]. His complaint alleges that Citizens breached its contract with him when it failed to properly safeguard his deposited funds from unauthorized withdrawals (Count One), violated the Electronic Funds Transfer Act (EFTA) 15 U.S.C. § 1693 by failing to supply Plaintiff with periodic account statements or reimburse unauthorized withdrawals (Count Three), and violated the implied covenant of good faith and fair dealing by neglecting to employ proper security procedures that would have prevented the fraudulent transfer of funds (Count Five).[1] (Pl.'s Compl. [Doc. # 1-2] at 5-11.) Plaintiff objects. (Pl.'s Mem. in Supp. of Obj. to Def.'s Mot. [Doc. # 22-1].)

I.    **Background**

Mr. Sachs deposited $54,163.28 into his checking account with Citizens Bank in 2014. After that, he rarely accessed the funds until October 2018 when he

---

[1] The Court granted Defendant's motion to dismiss on Count Two, alleging a violation of the C.G.S.A. § 42a-4A-202 through 204, and Count Four, alleging negligence on consent at Oral Argument on May 6, 2021. (*See* Minute Entry [Doc. # 29] at 1.)

1

unexpectedly needed cash for a football game and entered a Citizens branch to withdraw money from the account. At the bank branch, he was informed that the account had insufficient funds due to a number of withdrawals that had thoroughly depleted his account balance. Mr. Sachs reported the transactions to the Citizens Middletown branch and then to the Branford branch, where he was informed by multiple Citizens's employees that Citizens was working on recovering the funds that had been fraudulently transferred. (*See* Dep. of Howard Sachs, Ex. A to Decl. of Mark Bergamo [Doc. # 23] at 17, 19 (describing Plaintiff's conversations with the fraud department, the assistant manager at the Branford branch, Jason at the Guilford branch, and Erin at the Office of the Chair in which they all characterize the transactions as fraud).) He spoke at length with Erin who explained that the unauthorized transactions were "done from a hacker electronically," and that "[Citizens] would try to get a hold of the other bank and get a credit of the money that was taken." (*Id.* at 17, 19.) He also received letters from Citizens documenting the fraud and informing him that it had "reached out to the originating bank regarding the debit item(s) and are awaiting their response." (Letters from Citizens, Exs. A & B to Dec. of Howard Sachs [Doc. # 24] at 5, 7.)

After he was reimbursed for about half of the fraudulent transactions, Mr. Sachs was informed on January 23, 2020 that the remaining half could not be recovered "due to the length of time [he] took to notify [Citizens]" of the unauthorized transactions. (Sachs Decl. ¶ 13; *see also* Ex. C to Sachs Decl. [Doc. # 24] at 9.) Shortly thereafter, on March 31, 2020, Mr. Sachs filed suit in state court to recover the $27,900.00 he alleges is still owed to him by Citizens.

In Count One, Plaintiff argues that Defendant violated the Personal Deposit Account Agreement (PDAA) when it transferred money to an unauthorized party in violation of Citizens's promise that "[i]f we do not complete a transfer to or from your

2

designated account on time or in the correct amount according to our agreement with you, we will be liable for your losses or damages." (PDAA, Ex. 2 to Keith Banyon Affidavit [Doc. # 21-2] at 28.) Defendant's motion for summary judgment argues that the PDAA did not promise to guarantee the security of Plaintiff's funds and that Plaintiff's claim of oral modification of the PDAA lacked sufficient consideration. (Def.'s Mem. in Supp. of his Mot. [Doc. # 19-1] at 8.) At oral argument, Plaintiff contended that his consideration was his declination to bring suit if Citizens reimbursed his funds.

For Count Five, alleging a violation of the implied covenant of good faith and fair dealing, Defendant argues that Plaintiff offers no evidence to support the claim that Defendant acted in bad faith as required to prove breach of the covenant. Plaintiff responds that Defendant essentially lulled him into a false sense of security by promising him that the rest of his reimbursement was forthcoming but then failing to compensate him completely.

Finally, as to Count Three, alleging a violation of the EFTA, Defendant contends that Plaintiff failed to timely file his claim and is thus barred from recovery under the statute. Plaintiff argues that, although more than a year passed between when he discovered the fraud in October 2018 and when he brought suit in March 2020, the statute of limitations was equitably tolled while the bank conducted its investigation. Alternatively, he maintains that his claim accrued when Citizens concluded its investigation but still failed to fully reimburse him for the fraud in January 2020.

## II.   Discussion

### a.   Breach of Contract (Count One)

The PDAA instructs customers to contact Citizens about suspected errors "as soon as possible" but "no later than 60 calendar days after we sen[d] the FIRST statement on which the problem or error appeared." (PDAA at 28.)  Citizens agrees to

"tell [the customer] the results of our investigation within 10 business days following the date you notified us, and we will correct any error promptly," or, if more time is needed to investigate the claim, "provisionally recredit your designated account within 10 business days following the date you notified us for the amount you think is in error." (*Id.* at 29.) If Citizens does "not complete a transfer to or from your designated account on time or in the correct amount according to our agreement with you, we will be liable for your losses or damages." (*Id.* at 28.)

Plaintiff claims that Defendant violated the PDAA when it failed to complete the transfer of funds in accordance with the "agreement" formed when Citizens's employees orally promised him that his funds would be returned. Defendant argues that the "agreement" referenced in the PDAA is the PDAA itself, which cannot be orally modified. (*See* PDAA at 34 ("This agreement may not be amended or modified orally.").) It further argues that, even if the Court were to accept Plaintiff's formulation of "agreement," the new agreement lacked consideration and is thus unenforceable.

Where there is a written agreement, the unambiguous written terms of the contract govern, but "the determination of whether a contract term is ambiguous [] is a threshold question of law for the court." *Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 27 (2d Cir. 1988). "A word or phrase is ambiguous when it is capable of more than a single meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Id.* (internal quotations omitted).

Here, Plaintiff and Defendant differ on the meaning of the word "agreement" as used on page 27 of the PDAA. The term "agreement" is used multiple times

4

throughout the PDAA to refer exclusively to the PDAA, most notably on page 34 of the contract where it states that "this agreement may not be amended or modified orally." (PDAA at 34.) From this context, the Court concludes that "agreement" refers to the PDAA as a whole, and defeats Plaintiff's claim that the PDAA was effectively orally modified by Citizens's employees. As the PDAA does not appear to otherwise obligate Defendant to reimburse Plaintiff for errors, its failure to do so cannot constitute a breach of the contract.

Nevertheless, the PDAA does unambiguously obligate Defendant to "send [] monthly, quarterly, or annual statement[s]" reflecting account activity, and to, within ten days of being notified of an error, promptly investigate and reimburse the consumer for the error or provisionally recredit his account for the pendency of the investigation. (*See* PDAA at 17, 29.) In his deposition, Plaintiff testified that he never received any account statements, was not provisionally recredited for the funds, and was not informed of the bank's determination of the investigation until January 2020, over a year after he had alerted the bank to its errors. (Sachs Dep. at 6, 14, 22; Decl. of Howard Sachs [Doc. # 24] ¶ 13.) He also produced letters, dated January 2020, in which Citizens informed him that it had concluded its investigation but would not be reimbursing him for the funds. (Ex. C to Sachs Decl. at 2.) Defendant has offered no evidence to support its position, advanced at oral argument, that Plaintiff was sent or had access to account statements, or that Plaintiff was informed of the conclusion of Defendant's investigation prior to January 2020. Taking the facts in the light most favorable to Plaintiff, this summary judgment record supports Plaintiff's claim that Defendant breached the PDAA when it failed to send statements and failed to

conclude the investigation or otherwise provisionally recredit Plaintiff's account in a timely manner, causing Plaintiff to be harmed. Thus, summary judgment on Count One is denied.

     *b. Violation of the Implied Covenant of Good Faith and Fair Dealing (Count Five)*

     Plaintiff claims that Defendant violated the implied covenant of good faith and fair dealing when it partially restored the funds, promised Plaintiff that the rest would be forthcoming, and then promptly stopped reimbursement without valid justification. Defendant argues that this does not constitute bad faith, as required for breach of the implied covenant, because Defendant had no contractual obligation to reimburse Plaintiff under the PDAA.

     To breach the implied covenant of good faith and fair dealing, a defendant must act in bad faith, which "[g]enerally, [] implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *Durham v. Metro. Grp. Prop. & Cas. Ins. Co.*, No. 3:16-CV-01643-VLB, 2017 WL 3097590, at *3 (D. Conn. July 20, 2017). Defendant leaves unexplained why it waited until January 2020 to inform Plaintiff that his October 2018 notification of the fraud was untimely. Obviously, the fraudulent transactions made in 2014 fell outside of the sixty-day notification window that Defendant invoked to reject reimbursing Plaintiff, and Defendant did not need an additional fifteen months to determine that fact. Furthermore, Defendant has not demonstrated that all the fraud for which Plaintiff *was* reimbursed occurred within the sixty-day window, nor explained why some fraudulent transactions falling

outside the sixty-day window were reimbursed while others were not. Defendant is correct that it had no contractual obligation to reimburse Plaintiff for its errors, but it did have a contractual obligation to timely conclude the investigation of those errors or otherwise provisionally recredit Plaintiff's account. Construing the summary judgment record in Plaintiff's favor, it can be inferred that Defendant knew of that obligation and nonetheless strung Plaintiff along with the promise of payment, which it was avoiding unless and until it could recover the funds from other institutions, or until Plaintiff's remedial actions, like suit under the EFTA, would become time-barred. Because this could be sufficient for a reasonable jury to determine that Defendant was motivated by its self-interest when it neglected to fulfill its contractual obligation to complete the investigation in a timely manner, summary judgment as to Count Five, violation of the implied covenant of good faith and fair dealing, is denied.

> c.  *Plaintiff timely brought his EFTA claim for failure to reimburse him for the unauthorized transfers (Count Three)*

The EFTA requires financial institutions to provide periodic account statements to each consumer reflecting the date of the transfer, the amount involved, the type of transfer, and the recipient of the funds. 15 U.S.C. § 1693d.  To receive reimbursement for fraudulent transfers, consumers must notify the bank of suspected "errors," *see* 15 U.S.C. § 1693f, "within sixty days of transmittal of the statement" reflecting the unauthorized transactions. 15 U.S.C. § 1693g.  Once the bank has been notified of the unauthorized transactions, it has ten days to investigate the claim, confirm or deny the fraud, and reimburse the customer if appropriate. 15 U.S.C. § 1693f(a); *see also* 15 U.S.C. § 1693f(c) (permitting the bank to, in the alternative, provisionally recredit the consumer for the amount in controversy and complete the

investigation within forty-five days of notification by the consumer). If an error has occurred, the financial institution is required to fully reimburse the consumer. *See* 15 U.S.C. § 1693g(e) ("[A] consumer incurs no liability from an unauthorized electronic fund transfer."). A consumer may only be held liable for the fraudulent transaction if the financial institution demonstrates that the consumer failed to notify it within sixty days of the transmission of the account statements reflecting the error. 15 U.S.C. § 1693g. If the financial institution fails to fulfill its obligation of "any provision of this subchapter," the consumer may bring suit "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1693m.

"[A]ccrual [of a cause of action] occurs when the plaintiff has 'a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief.'" *Allen v. Antal*, 665 F. App'x 9, 12 (2d Cir. 2016) (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997)). Defendant argues that Plaintiff's claim accrued, at the latest, in October 2018 at the end of the ten-day investigatory period allotted to Citizens to resolve the fraud, and that Plaintiff's suit, brought in March 2020, is therefore untimely. (Def.'s Mem. at 6.) Plaintiff contends that Citizens's investigation equitably tolled the statute of limitations, or that his claim accrued in January 2020 when Citizens informed him that it would not reimburse him for the remaining fraudulent transactions, such that his March 2020 filing was timely. (Pl.'s Obj. at 7.)

Although "[w]hether the EFTA permits equitable tolling remains an unsettled question in the Second Circuit," *Roller v. Red Payments L.L.C.*, No. CV195285-GRB-VMS, 2021 WL 505558, at *4 (E.D.N.Y. Feb. 11, 2021), the doctrine does require a showing

of "rare and  exceptional circumstances" that prevented the party "in some extraordinary way" from exercising his rights, *Apostolidis v. JP Morgan Chase & Co.*, No. 11-CV-5664 JFB WDW, 2012 WL 5378305, at *7 (E.D.N.Y. Nov. 2, 2012).[2] Here, Plaintiff alleges that Citizens took fifteen months to "investigate" claims of fraud that it admitted it never legitimately disputed were fraudulent, promised to reimburse Plaintiff for the full extent of his loss, and then rejected his claims as untimely even though it had failed to timely send Plaintiff statements showing that account. Such incompetence, at best, and purposeful deception, at worst, on the part of a trusted financial institution ought to constitute exceptional circumstances warranting equitable tolling of the statute. Thus, the Court deems Plaintiff's claim tolled during the pendency of Citizens's "investigation" and the claim was timely brought in March 2020.

Furthermore, Plaintiff asserts two separate violations of the EFTA: first, that he never received periodic statements of the account; and second, that Defendant failed to fully reimburse him for the unauthorized transactions. (Compl. ¶¶ 6, 8, 15, 17, 32, 35-36.) Plaintiff supports his position that his claim accrued in January 2020 by reference to a letter he received from Defendant on January 23, 2020 informing him that "[d]ue to the length of time you took to notify us, we are unable to recover the funds." (Ex. C to Sachs Decl. [Doc. # 24] at 9.) At oral argument, Defendant

---

[2] Defendant's reliance on *Katz v. JP Morgan Chase, N.A.* is misplaced as *Katz* explicitly did "not determine whether equitable tolling or the delayed discovery doctrine appl[ied]" during the pendency of a bank's investigation. No. 9:14-CV-80820, 2015 WL 11251764, at *4 (S.D. Fla. Feb. 10, 2015).

explained that this letter referenced the sixty-day time limitation imposed by §
1693g:

> [R]eimbursement need not be made to the consumer for losses *the financial
> institution establishes* would not have occurred but for the failure of the
> consumer to report *within sixty days of transmittal of the statement* . . . any
> unauthorized electronic fund transfer or account error *which appears on the
> periodic statement provided to the consumer* under section 1693d of this title.

§ 1693g(a) (emphasis added). With regard to how the sixty-day limit applied in the
absence of periodic account statements, Defendant argued that, regardless of
transmission of the statements, Plaintiff unreasonably delayed notifying it of the
fraud and therefore could not be reimbursed.

Defendant cannot logically argue that it was entitled to reject Plaintiff's
requests for reimbursement for failing to timely notify it of fraud where, because of
its own dereliction of its duties to transmit Plaintiff's account statements, Plaintiff had
no basis to detect the fraud.

Moreover, the financial institution seeking to reject reimbursement of
fraudulent transfers ultimately bears "the burden of proof [] to establish that the
conditions of [consumer] liability set forth in subsection (a) have been met," including
that account statements were transmitted and that Plaintiff failed to notify it of the
fraud within the sixty-day period following transmittal. § 1693g(b). Here, Defendant
has not carried its burden.[3] It asserts in briefing and argument that statements were
sent to Plaintiff but offers no evidence in support thereof. It argues alternatively that

---

[3] In the only summary judgment case relied upon by Defendant, the plaintiff
admitted to having received his account statements and the defendant bank also
provided the court with a record of the statements. *See Acafrao v. U.S. Century Bank,*
No. 09-21695-CIV, 2010 WL 11596731, at *3 (S.D. Fla. Aug. 9, 2010).

the statements were available to Plaintiff via Citizens's online banking portal, but offers no documentation, such as the account statements, the dates of their transmittal, or a record of Plaintiff's access to the online portal to support its contention.[4] As Defendant failed to establish the conditions of consumer liability, it would be liable to reimburse Plaintiff for the funds in full.[5] Plaintiff's claim thus could have accrued when Defendant ultimately failed to fulfill this obligation in January 2020.

Defendant's contention that Plaintiff's claim accrued in October 2018 is further unpersuasive because Plaintiff does not allege that he was harmed by the excessive length of the bank's investigation, which could constitute an independent violation of the EFTA, but rather by Defendant's failure to reimburse him for the fraud. *See Katz*, 2015 WL 11251764, at *3 (S.D. Fla. Feb. 10, 2015) (distinguishing "failure to reimburse" from "failure to investigate" claims and concluding that "the statute of limitations [for failure to investigate claims] begins to run ten days after the consumer provides the oral or written notice of the alleged error"). Failure to reimburse represents a separate violation, in addition to Defendant's failure to

---

[4] At oral argument, Defendant admitted that it likely could have provided such documentation to support its motion but declined to do so. Without evidence supporting its claim of Plaintiff's access to the online system and the account statements that he would have found there if he accessed it, Defendant's reliance on *Walbridge v. Ne. Credit Union* is misplaced as the plaintiff in *Walbridge* did not dispute accessing his online account. 299 F. Supp. 3d 338, 351 (D.N.H. 2018).

[5] The bank does not contest the fraudulent nature of the transactions. (*See supra* at 2.) Rather, it appears that Defendant promptly concluded that each transaction constituted an error under the EFTA and hoped to delay payment to Plaintiff until it could be reimbursed by the recipient bank. However, the EFTA requires financial institutions to compensate consumers for the institution's errors regardless of its ability to recover those funds from a third party.

transmit periodic account statements, failure to properly complete the investigation within ten days, and failure to provisionally credit his account for the fraudulent transactions. Thus, the Plaintiff's claim ripened in January 2020 when Citizens declined to reimburse him, and Plaintiff timely brought suit two months later. Summary judgment on Count Three is denied.

### III.    Conclusion

For the foregoing reasons, Defendant's motion for summary judgment [Doc. # 19] is DENIED as to Counts One (Breach of Contract), Three (EFTA), and Five (Implied Covenant). Summary judgment is entered on Counts Two and Four. This case will now proceed to a bench trial in accordance with a separately issued schedule.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 4th day of August 2021.